# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

JAMES WILLIAMS,

    Plaintiff,

v.                                                                  Case No. 5:19-cv-89-TKW/MJF

R. HUGHES and A. MURRELL,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before this court on Defendant Ashley Murrell's motion to dismiss. (Doc. 36). Plaintiff filed responses. (Docs. 52, 59). For the reasons set forth below, the undersigned recommends that Defendant Murrell's motion to dismiss be denied without prejudice.[1]

### I. Procedural Background

**A. Case History Prior to the Undersigned's Report and Recommendation ("R&R")**

Plaintiff James Williams, an inmate in the custody of the Florida Department of Corrections ("FDC") proceeding *pro se* and *in forma pauperis*, commenced this

---

[1] The district court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

action pursuant to 42 U.S.C. § 1983 against two Defendants: Ashley Murrell and Sergeant R. Hughes.[2] (Doc. 1). On May 4, 2020, Defendant Murrell filed a motion to dismiss. (Doc. 36). Defendant Murrell argued that Williams's claim should be dismissed because he had failed to exhaust his administrative remedies. (*Id.* at 5-10). In support, Murrell only attached Williams's informal and formal grievances filed at the institutional level. Murrell conceded that—despite asking for Williams's appeal file—she did not have it and was "unable to determine if Plaintiff appealed any of the formal grievances." (*Id.* at 9 n.7). Murrell argued that Williams did not exhaust his administrative remedies because "[r]egardless of whether he appealed any of the formal grievances, the formal grievances failed to reference his purported foot injury or Murrell." (*Id.*).

**B.   THE R&R**

On December 18, 2020, the undersigned issued a R&R and recommended that Murrell's motion to dismiss for failure to exhaust be denied. (Doc. 53). In part, the undersigned found that the Eleventh Circuit's decision in *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205 (11th Cir. 2015), precluded the court from applying a procedural bar that prison officials declined to enforce. In the absence of any proof that Williams had or had not filed a grievance appeal and the result of any such

---

[2] Despite several attempts to effect service, Defendant Hughes was served only recently. (Docs. 50, 51).

appeal, Murrell failed to carry her burden on this affirmative defense.

### C. THE PARTIES' POST R&R FILINGS

Three days after the R&R was filed, Murrell filed her motion for reconsideration. (Doc. 55). The District Court referred this motion to the undersigned to consider the 173 pages of "new evidence." (Doc. 56). In light of the arguments presented by the parties, the undersigned granted the motion for reconsideration. (Doc. 60). This matter is now before this court on Defendant Murrell's motion to dismiss and Plaintiff's responses.

## II. FACTUAL BACKGROUND

The following facts are taken from Williams's second amended complaint and are assumed to be true for the purpose of the motion to dismiss. (Doc. 17).

In July of 2018, Williams developed a lesion on the bottom of his left foot. (*Id.* at 5). Williams alleges that the lesion likely was from an infection of staphylococcus bacteria and that it leaked both blood and pus. (*Id.*). The lesion also caused Williams's foot to swell. Williams alleges that he was unable to stand, participate in recreation, or walk to the shower due to the pain from the lesion. (*Id.*). Williams declared a medical emergency to Hughes, but Hughes refused to call medical staff because "he didn't feel like doing the paperwork." (*Id.*).

Later, Williams stopped Murrell, a nurse employed by Centurion of Florida, LLC, who was accompanied by Hughes. (Doc. 17 at 5). Williams declared a medical

emergency and informed Murrell about the lesion, his inability to walk, and the blood and pus. (*Id.*). Hughes informed Williams that he had already declined to call medical because Hughes did not want to do the necessary paperwork. (*Id.*). Murrell informed Williams that he could fill out a sick call request. Murrell did not assess Williams's condition at that time. (*Id.*).

Williams made several sick call requests, but the FDC never responded. (*Id.*). Williams also filed grievances for the denial of medical treatment. (Doc. 17 at 5). Williams asserts that prison officials stated that he had refused medical treatment. (*Id.*). Williams claims that Hughes falsely signed a medical refusal slip for Williams. (*Id.*).

Thereafter, Williams filed another sick call request and was seen by Murrell. Murrell provided Williams with cream to apply to his foot, but she did not prescribe antibiotics or any medication to treat Williams's pain. (*Id.* at 6). Williams alleges that the cream did not reduce the swelling of his foot, relieve the pain, or reduce the blood and pus in the lesion. (*Id.*).

Williams returned to the medical department. Murrell then prescribed Williams dandruff shampoo and instructed Williams to soak his foot. (*Id.*). Williams again requested pain medication and antibiotics. He also asked to see a physician. Murrell purportedly denied these requests and told Williams that "she knew what she was doing and that she didn't need a doctor to tell her how to do her job." (*Id.*).

Williams continued to file sick call requests, but Murrell allegedly told other medical staff to disregard the requests. Williams alleges that Murrell never prescribed medication for his lesion, including antibiotics or pain relievers. He asserts that he continues to have pain and he suffered scarring. He asserts that the lesion continues to prevent him from standing, walking to the showers, and participating in recreation. (*Id.*).

Williams asserts a claim of deliberate indifference against Murrell and seeks compensatory and punitive damages. (Doc. 17 at 7). Williams did not indicate whether he is bringing this claim against Murrell in her official or individual capacity. Because Williams is proceeding *pro se*, and *pro se* complaints must be read liberally, the undersigned has read Williams's complaint to assert a claim against Murrell in both her official and individual capacities.

### III.   STANDARD

The Prison Litigation Reform Act ("PLRA") prohibits a prisoner from commencing a Section 1983 action "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Alexander v. Hawk*, 159 F.3d 1321, 1323-24 (11th Cir. 1998). In other words, exhaustion of available administrative remedies is a mandatory pre-condition to suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001) ("The 'available' 'remed[y]' must be 'exhausted' <u>before</u> a complaint under § 1983 may be entertained.") (emphasis added); *see also Porter*

*v. Nussle*, 534 U.S. 516, 524-25 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").

"[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91; *see Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' . . . —rules that are defined not by the PLRA, but by the prison grievance process itself."). The failure to properly exhaust before filing suit warrants dismissal of the complaint.

### IV.  DISCUSSION

**A.  THE FDC'S ADMINISTRATIVE GRIEVANCE PROCEDURE**

For an inmate to fully exhaust the FDC's administrative remedies, the FDC's grievance procedure generally requires an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance at the institutional level with the Warden's office, and (3) submit an appeal to the Office of the

Secretary (through the Bureau of Policy Management and Inmate Appeals in the FDC's Central Office). *See* Fla. Admin. Code rr. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010). If an inmate is filing a medical grievance, he may bypass use of an initial informal grievance and begin his medical complaint with a formal grievance at the institutional level. *See* Fla. Admin. Code rr. 33-103.006(1), (3)(e), 33-103.008(1), 33-103.019. If the inmate is dissatisfied with the result of the medical formal grievance, the inmate is authorized to appeal to the Central Office. *Id.* at r. 33-103.007(1), 33-103.008(2).

Appeals and direct grievances to the Office of the Secretary are processed through the relevant institution. Fla. Admin. Code r. 33-103.007(5). A designated office in each FDC institution processes grievances and appeals. (*Id*.). That designated office has a logging and tracking system that records and documents the receipt and mailing of inmate grievances and appeals. (*Id*.).

**B.     THE PROCEDURE FOR ADJUDICATING A DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

Failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of proving. *Jones*, 549 U.S. at 216. Adjudicating a motion to dismiss for failure to exhaust administrative remedies involves two steps. *See Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). First, the court looks to the factual allegations in the defendant's motion and those in the plaintiff's

response. *Id*. If the respective assertions conflict, the court must presume that the plaintiff's version is true. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*.; *see also Bryant v. Rich*, 530 F.3d 1368, 1373-74 (11th Cir. 2008).

If the complaint is not subject to dismissal at the first step, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (citing *Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies.

## C.   APPLICATION OF TURNER TO PLAINTIFF'S CASE

At the first step of the *Turner* analysis, the court cannot resolve the issue of exhaustion. Defendant Murrell asserts that Williams failed to exhaust his administrative remedies because he did not file a formal grievance or appeal that is sufficient to exhaust his claim against Murrell. Specifically, Defendant argues that Williams's grievances and appeals neither mentioned Murrell by name nor sufficiently addressed the allegation that Murrell provided inadequate care for Williams's foot. (Doc. 36 at 9). In support, Defendant Murrell provided 173 pages

of Williams's informal and formal grievances and appeals to the secretary of the FDC. (Doc. 55-1).

For his part, Williams asserts that he filed several sick call requests and grievances. He also claims that he submitted an appeal to the Secretary of the FDC relating to Murrell's alleged misconduct, but that he does not have a copy of this appeal. (Doc. 52 at 2; Doc. 59 at 2). Taking Williams's version of the facts as true, the court cannot conclude that he failed to exhaust.

Thus, this court must proceed to the second step of the *Turner* analysis and resolve the factual dispute. Notably, however, a district court "may resolve disputed questions of facts on submitted papers only 'in the absence of a timely request for an evidentiary hearing.'" *McIlwain v. Burnside*, 830 F. App'x 606, 611 (11th Cir. 2020) (quoting *Bryant*, 530 F.3d at 1377 n.16).

On August 10 and 29, 2018, Williams filed two formal grievances. (Doc. 36-1 at 4-5; 55-1 at 106-07, 114-17). Williams alleged that he was coughing up blood and several FDC officials denied Williams's medical emergency. He also asserts generally that these officials improperly handled his sick call requests, which resulted in lack of medical care. Additionally, he asserts that the officers lied about taking him out of his cell and to sick call. These grievances do not mention Murrell, and they do not address the lack of medical care for his foot lesion. These formal grievances were denied, and Williams was advised he could appeal to the Secretary

of the FDC. (Doc. 55-1 at 113). On September 20, 2018, Williams appealed. His appeal raised the same issues as those in the formal grievances. (Doc. 36-1 at 12; Doc. 55-1 at 111-12). Notably, he did not mention Murrell by name. He also did not include any allegations that he was denied medical care for a foot lesion. Although Williams submitted the appeal, it does not appear that he received a response from the Secretary of the FDC.

On September 2, 2018, Williams submitted a second formal grievance. (Doc. 36-1 at 7-9; Doc. 55-1 at 100-02, 144-46, 152-54). This grievance was substantially similar to his first two formal grievances. He again alleged that the FDC officials were impeding his access to the medical department. Specifically, he alleged that an FDC official interfered with his sick call access by giving Williams's sick call request to the "canteen man." Williams also alleged that the officers lied and said that Williams refused to go to the medical department for sick call. Williams asserts that he was never taken out of his cell, officers never told him he was on call out, and that he never refused medical attention. (Doc. 36-1 at 7-9; Doc. 55-1 at 100-02, 144-46, 152-54). This formal grievance does not name Murrell, nor does it address the purported lack of care for his foot. This formal grievance was denied, and Williams was advised that he could appeal. On September 24, 2018, Williams appealed this grievance. The appeal contains the same allegations as the formal

grievance, but it does not mention Murrell or the purported denial of treatment for Williams's foot. (Doc. 55-1 at 140-42).

Although the claims raised in these grievances and appeals are fully exhausted,[3] the substance of these appeals does not sufficiently put the FDC on notice of the inadequate care for Plaintiff's foot infection. *See Maldonando v. Unnamed Defendant*, 648 F. App'x 939, 953 (11th Cir. 2016) ("The exhaustion requirement, allowing prison officials to address complaints in the first instance, is satisfied as long as the inmate's grievance provides sufficient detail to allow prison officials to investigate the alleged incident.") (citing *Jones*, 549 U.S. at 219); *Harvard*, 411 F. Supp. 3d 1220, 1244 (N.D. Fla. 2019) (noting that the grievance must "alert the prison to the nature of the wrong for which redress is sought."). Rather, these grievances and appeals alerted FDC officials to the fact that officers ignored a medical emergency (Williams coughing up blood while in administrative confinement), destroyed or improperly disposed of Williams's sick call requests, and refused to take Williams to the medical department for sick call. (Doc. 55-1 at 99-100, 111-15, 140-42). These grievances and appeals do not mention Murrell, the denial of medical care for his foot lesion, the prescription of dandruff shampoo for

---

[3] "Unless the inmate has agreed to an extension in writing, expiration of" the time limits for a response "at any step in the grievance process entitles inmate to proceed to the next step." *Trias v. Fla. Dep't of Corr.*, 587 F. App'x 531, 535 (11th Cir. 2014) (citing Fla. Admin Code r. 33–103.011(4)).

the infection on his foot, and that Murrell was retaliating against him. (Doc. 17). Thus, these grievances are insufficient to exhaust his administrative remedies of this claim.

After these grievances were submitted, Plaintiff did submit an informal grievance. Although Williams did not specifically mention Murrell in his informal grievance dated October 5, 2018, this grievance sufficiently alerted prison officials to the issue of Williams's foot lesion, that it was "very painful," and that Williams was given only dandruff shampoo as treatment. The grievance states:

> I am writing this to see what is going on. I was given anti-dandruff shampoo for a foot fungus that is not made for a foot fungus. I got foot fungus from the dirty showers. It now formed a lump under my skin on my toe that is very painful. Why did they give me a shampoo? That doesn't make sense. Can you explain to me why I was given that for? Thank you.

(Doc. 36-1 at 3). After reviewing the 173 pages of the appeal file, it does not appear that Williams's wrote a formal grievance or appeal on this issue. (Doc. 55-1). Williams responded twice that he needs to develop the record, however. (Doc. 52 at 2; Doc. 59 at 2).

Specifically, Williams claims that—despite the appeals file provided by Murrell that shows Williams failed to exhaust his administrative remedies—he filed an appeal relating to Murrell's misconduct. (Doc. 59 at 2). He also asserts that limited discovery into this issue will show that he fully exhausted his claim. (Doc. 52 at 2; Doc. 59 at 2). Notably, Defendant's exhibit is not accompanied by any

certification that the appeal file is Williams's entire appeal file, there is no declaration from the custodian of records indicating that it is the complete file, and Defendant Murrell did not provide the appeal log that is maintained pursuant to Fla. Admin Code rr. 33-103.012. (Doc. 36-1; Doc. 55-1).

In light of Williams's request that this court permit a limited discovery period, the undersigned recommends opening a brief discovery period for the parties to develop the record as to whether Williams exhausted his administrative remedies.[4] *See McIlwain*, 830 F. App'x at 611 (reversing a district court's dismissal of a prisoner's complaint for failure to exhaust when the district court "did not give [the plaintiff] an opportunity to develop the record on this issue before deciding it based on submitted papers"). Additionally, the undersigned recommends that Murrell's motion to dismiss be denied without prejudice to Murrell refiling her motion to dismiss after the limited discovery period has ended.

## V.  CONCLUSION

For the reasons set forth above, it is **ORDERED:**

1.  The parties be permitted a forty-five-day period of discovery, limited to determining whether Plaintiff exhausted his administrative remedies.

---

[4] Williams asserts that he needs to engage in discovery to elicit testimony from the Inspector General of the FDC regarding Williams's exhaustion attempts. While the undersigned doubts the Inspector General will have personal knowledge as to this issue, it is likely that the custodian of records will likely be able to provide such evidence if any exists.

2.      Defendant Murrell's motion to dismiss (Doc. 36) be **DENIED** without prejudice to Defendant Murrell refiling at the close of the limited discovery period.

At Panama City Beach, Florida, this 25th day of January, 2021.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**