UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JAMES WILLIAMS,

     Plaintiff,

v.                                     Case No.  5:19-cv-89-TKW/MJF

R. HUGHES and A. MURRELL,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

In this section 1983 action, Defendant Ashley Murrell moves to dismiss Plaintiff James Williams's claim of deliberate indifference to a serious medical need because Williams failed to exhaust his administrative remedies prior to initiating this civil action. (Doc. 64). Williams has not filed a response. Because Williams in fact failed to exhaust his administrative remedies, the District Court should dismiss Williams's claim against Murrell.[1]

### I. BACKGROUND

At all relevant times, Williams was an inmate entrusted to the Florida Department of Corrections ("FDC"). In July of 2018, Williams developed a lesion

---

[1] The District Court referred this case to the undersigned to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

on the bottom of his left foot. This lesion caused his foot to swell. (Doc. 17 at 5). Williams alleges that, due to the pain caused by the lesion, he was unable to stand, participate in recreation, or walk to the shower. (*Id.*).

At his initial sick call relating to his lesion, Defendant Ashley Murrell—who is a nurse—provided Williams a cream and instructed him to apply the cream to his foot. After this cream did not remedy the lesion, Williams returned to sick call. He asked for antibiotics, pain relievers, and an appointment with a physician. Murrell denied these requests. Instead, Murrell provided Williams dandruff shampoo and instructed him to soak his foot. After this second sick call, Murrell instructed other medical staff to discard Williams's sick call requests. Williams asserts that Murrell acted with deliberate indifference to his serious medical need.

Murrell asserts the defense of failure to exhaust administrative remedies. On February 19, 2021, the undersigned provided the parties an opportunity to conduct limited discovery regarding this issue. The undersigned directed Murrell to file a motion to dismiss or a notice withdrawing the defense on or before April 30, 2021. Additionally, the undersigned ordered Williams to file a response to Murrell's motion to dismiss—if any was filed—on or before May 18, 2021. On April 28, 2021, Defendant Murrell filed a motion to dismiss. Williams has not filed a response.

## II. DISCUSSION

A.      **The PLRA's Exhaustion Requirement**

The Prison Litigation Reform Act ("PLRA") prohibits a prisoner from commencing a Section 1983 action "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Alexander v. Hawk*, 159 F.3d 1321, 1323-24 (11th Cir. 1998). In other words, exhaustion of available administrative remedies is a mandatory pre-condition to suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001) ("The 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained.") (emphasis added); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").

"[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91; *see Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable

procedural rules,' . . . —rules that are defined not by the PLRA, but by the prison grievance process itself."). The failure to properly exhaust before filing suit warrants dismissal of the complaint.

**B.    The FDC's Administrative Grievance Procedure**

To exhaust the FDC's administrative remedies, the FDC's grievance procedure generally requires an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance at the institutional level with the Warden's office, and (3) submit an appeal to the Office of the Secretary (through the Bureau of Policy Management and Inmate Appeals in the FDC's Central Office). *See* Fla. Admin. Code rr. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010). If an inmate files a medical grievance, he may bypass use of an initial informal grievance and begin his medical complaint with a formal grievance at the institutional level. *See* Fla. Admin. Code rr. 33-103.006(1), (3)(e), 33-103.008(1), 33-103.019. If the inmate is dissatisfied with the result of the medical formal grievance, the inmate is authorized to appeal to the Central Office. *Id.* at r. 33-103.007(1), 33-103.008(2).

Appeals and direct grievances to the Office of the Secretary are processed through the relevant institution. Fla. Admin. Code r. 33-103.007(5). A designated office in each FDC institution addresses grievances and appeals. (*Id*.). That

designated office has a tracking system that records and documents the receipt and mailing of inmate grievances and appeals. (*Id*.).

## C.    <u>Procedure for Adjudicating Motions to Dismiss for Failure to Exhaust</u>

Failure to exhaust administrative remedies is an affirmative defense which a defendant bears the burden of establishing. *Jones*, 549 U.S. at 216. Adjudicating a motion to dismiss for failure to exhaust administrative remedies involves two steps. *See Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). First, the court looks to the factual allegations in the defendant's motion and those in the plaintiff's response. *Id*. If the respective assertions conflict, the court must presume that the plaintiff's version is true. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*.; *see also Bryant v. Rich*, 530 F.3d 1368, 1373-74 (11th Cir. 2008).

If the complaint is not subject to dismissal at the first step, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (citing *Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies.

**D.    Application of *Turner* to This Case**

**1.    *Williams's First Grievance***

On August 10, 2018, Williams submitted to the Warden an inmate request form,[2] which alleged that the FDC denied him appropriate medical care when he coughed blood. This grievance does not mention anything about Murrell allegedly denying Williams adequate medical care regarding the lesion on his foot. Williams's grievance states:

> This grievance is [due] to the fact that I have [been] mistreated while in confinement for well over 120 days. I understand that [they] have a job to do. I cough up blood. When this first happen[ed], I yelled for help. So Sgt. Hatten, Officer Brown and Officer Lukettes had ransack[ed] my room [and] put me in the holder cell. Captain Maddox came at that point and Sgt. Hatten told me to [sign] up for sick call. [T]o my understanding, if you are bleeding or [dying] that is an emergency. So, I never got to see the nurse. I [had] been [writing] sick call prior that. They told me that I refused sick call. I never seen a nurse that day. So, I wrote a grievance. I told them to show me where I signed a refusal. So, I filled out one more [sick call] on July 30, 2018 [While] passing out canteen, Officer Brown grab[bed] my sick call paper out of my door and gave it to the canteen man. Now, I filled out another [sick call], Miss Priscott pick[ed] it up and turn[ed] it in. Now I have been waiting. Yesterday, on 8-9-18, I ask[ed] all day to see what [was] up with my sick call. Sgt. never came to see what was going on. [illegible] sent Officer Brown ok they to write another [sick call]. Now I had a dental call out to get a tooth pulled. When I was done, Officer Adam was escorting me back. I asked him can I ask the nurse what [is] going on I fill[ed] out sick call 3 times. I have very bad headaches. It is in my file. She ask[ed] me what my DC# is. I stated Y34053. She pulled my chart. She came back out and said that I came up there 2 days ago and refuse[d] on 8-7-18. Now there is audio and video back here that I know works. Why do these officers keep [lying]/saying that they took me out

---

[2] The FDC log number for this grievance is faded. (Doc. 64-3 at 70).

> [of] my cell? If you look, [on] Tuesday, I never exit my cell. They put someone in it. I want this to be looked at ASAP. That is not a person of D.O.C. job to lie. I don't want no to retaliate on me. I just sent my mom a letter to notify her. Please seek action ASAP I feel like harm is being done. I have not [done] anything, I mean anything, but sit back here since April 2, 2018 with no write up and I do ask that something is done ASAP. Thank you. Please look into in my right being violated.

(Doc. 36-1 at 4-5; Doc. 64-3 at 70) (grammatical and typographical errors in original). On August 27, 2018, the FDC denied this grievance. (*Id.*). Apparently, Williams did not appeal this decision to the FDC Secretary.

### 2.    *Williams's Second Grievance*

On August 29, 2018, Williams submitted a formal grievance to the Warden which was substantially similar to the grievance he submitted on August 10, 2018. This grievance does not mention anything about Murrell allegedly denying Williams adequate medical care regarding the lesion on his foot. This second formal grievance (Log Number 1808-101-212) states:

> This grievance is [due] to the fact that I [have] been mistreated while in confinement for well over 120 days. I understand they have a job to do. I cough[ed] blood. When this first happened, I yelled for help. Sgt. Handsford, Officer Brown and Officer Lukettes had [ransacked] my room [and] put me in the holding cell. Captain Maddox came at that point and Sgt. Handsford told me to [sign] up for sick call. To my understanding if you are bleeding or [dying] that is an emergency. So, I never got to see the nurse. I [had] been [writing] sick call [prior] to that. They told me that I refuse[d] sick call. I never seen a nurse that day. So I wrote [a] grievance. I told them to show me where I [signed] a refusal. So, I filled out one more [sick call] on July 30, 2018 [While] passing out canteen, officer Brown grab[bed] my sick call paper out the door and gave it to the canteen man. Now I filled out another one and miss presscott pick[ed] it up and turn[ed] it in. Now I have been waiting

> yesterday on 8-9-18 I ask all day to see what up with my sick call. Sgt. never came to see what was going. He sent officer brown. Ok they to write another one. Now I had a dental call out to get a tooth pulled. When I was done, Officer Adams was escorting me back. I ask the nurse what going on. I fill out sick call 3 times. I have very bad headaches it is in my file. She ask me what my DC# is. I stated Y34053. She came back and said that I came up there 2 days ago and refuse[d] on 8-7-18. Now, there is audio and video back here that I know works. Why do these officers keep [lying] saying that they took me out [of] my cell. If you look Tuesday I never exited my cell. They put someone in it. I want this to be looked into ASAP. That is not a person of DOC job to lie. I don't want nobody to [retaliate] on me. I just sent my mom a letter to [notify] her please seek action ASAP. I feel like harm is being done. I have not [done] anything. I mean anything but sit back her since April 2nd 2018 with no write up and I do ask that something is done ASAP. Thank you. Please look into this. My right [are] being [violated].

(Doc. 64-3) (grammatical and typographical errors in original). The FDC also denied this grievance. (*Id.* at 67).

On September 20, 2018, Williams appealed the denial of his formal grievance. (*Id.* at 65-66). On September 28, 2018, the Department of Corrections Inmate Grievance Appeal department received Williams's formal grievance and denied it. (*Id.* at 4, 65).

### 3. *Williams's Third Grievance*

On August 30, 2018, Plaintiff submitted an informal grievance to the Mental Health Department, which stated:

> Ya'll keep telling me to [sign] sick call. Do you not understand I [signed] sick call 4 times and every time they say that I am refusing. This is ongoing. Ya'll saying that I am refusing. The officers saying, that ya'll aint putting me on the list. All I want is to see what wrong. I [illegible] grievance and still have not seen nobody. [Does] it take for

me to write my lawyer and tell him that somebody is refusing to let me
see medical. My foot look crazy I don't know what it is but it hurt. It
forms as a blister wit[h] blood in it. Then it look like puss and blood
came out when I pop it. It [is] on my toes and the bottom of my foot. It
is to big brown spots on my foot that hurts and I keep having these bad
headaches. All I want is to go to medical.

(Doc. 36-1 at 2). On September 20, 2018, an FDC official responded to the grievance

and stated, "Consider sick call for your medical concerns/issues." (*Id.*). Williams did

not appeal this response. (Doc. 64-3).

### 4.    *Williams's Fourth Grievance*

On September 2, 2018, Williams signed and submitted another formal

grievance to the Warden (Log Number 1809-102-018). In this formal grievance,

Williams also alleged that FDC officials denied him appropriate medical care. This

grievance does not mention anything about Murrell allegedly denying Williams

adequate medical care regarding the lesion on his foot. This grievance states:

This grievance is of a medical nature, timely file[d] in complian[ce]
with Ch. 33.106.006(2)(g) 1st, 5th, 8, 14. This has been ongoing for a
while me being mistreated and denied medical. I did everything they
ask[ed] me to do the first time. It started back in July. I wrote medical
and ask them how come I have not seen sick call. They told me I
refuse[d]. That was on Sgt. Hanford's shift. I wrote it up because I never
refuse[d]. They told me to fill out another sick call. I did my slip. [It]
never got turn[ed] in due to Officer Brown giving it to the canteen man.
I wrote another one and waited 7 days. I never was seen. That was the
3rd one I wrote. I had a callout to get my tooth pull. On the way back to
Y-dorm, I ask[ed] Officer Adams can I ask the nurse what [is] going on
with why I am not going to sick call. He told me yes. I ask[ed] the nurse
if she can let me know how come I have not been seen for sick call. I
[signed] 3 sick calls. She told me on Tuesday 8-7-18, which was Sgt.
Hughes shift that I was brought up here and I refuse[d]. That was after

I gave her my DC#y34053 and name. I never was even [taken] out [of] my cell. I ask[ed] Sft. Hughes about it. He said he don't know what I am talking about. I [signed] up again. 7 days pass again. I still haven't seen sick call. I ask Miss Presscott. She stated do I look like sick call[;] I don't answer sick calls. I told her I been writing sick call and they keep saying I refuse. She said I don't know what to tell you per Ch. 33, I am suppose[d] to [sign] a refusal when ever I refuse. It will show on video that I never [signed] a paper. This is an ongoing thing on both shifts. I call medical emergency on Handford's shift. They Just walk pass my cell like they don't hear me. I called a [psych] emergency on Friday 8-31-18 at 10:23 AM. I told Officer Brown. Nobody cam back. That is on audio. I [signed] 2 more sick call and still have not seen medical. They keep saying that I am refusing. Why would I keep [signing] up for sick call just to refuse? On 8-26-18, Officer Hatton said he called medical to see what [was] going on. They told him that I am on the callout for Monday 8-27-18. I ain't go. I ask Officer Brown about it. He told me that they ain't do sick call, but right after that they pulled [an] inmate out for sick call. On 8-29-18, Sgt. Reed called medical because I have been complaining. He said the nurse said that she was gonna come see me and see what going on because this is [an] ongoing issue. She never came. On 8-30-18 at 3:14 pm, I [asked] Officer Jhonson, P about me going to medical. He stated that the nurse said I am going to be on the call out for 8-31-19. Again, I never seen medical. Why am I being denied medical on both shifts. Nobody ever came to my cell and said Williams you have a call out for sick all. Your officer [and] Sgt. are not doing [their] job. Care, Custody, and [Control], they have yet to do that. All I want is to go to medical. I [signed] 5 sick calls and gave every one to the sick call nurse. One of them Captain Titus turn[ed] in. I told the white shirts. They told me to write it up. I did. The[y] denied it in retaliation. I wrote up Captain Maddox because he refused me medical when I was [coughing] blood. He told me to [sign] up for sick call. He answered my grievance that was on him and Sft. Handford's shift about this same issue. I told the assistant warden and also wrote him and still have not went to medical. My rights are being violated and I want something to be done about this matter that has been going on ASAP. The officer say I am not on the call out. I write medical they say that I keep refusing. I am being mistreated while in the y-dorm. I feel like they are trying to harm me by not letting me go to medical and see what is wrong with [sic]. I been in y-dorm 5 months with no problem. I don't feel safe in y-dorm. To resolve this matter, I would

> like to be [taken] to medical and the officers that are [responsible] I
> want legal action take ASAP. My rights to medical has been violated.

(Doc. 64-3 at 80-82) (grammatical and typographical errors in original). The FDC

denied this grievance. (*Id.* at 79). Williams appealed the denial of this grievance to

the FDC Secretary. (Doc. 64-3 at 76-78). On October 1, 2018, the grievance was

received by the Department of Corrections Inmate Appeals department, which

denied the appeal on October 4, 2018. (Doc. 64-3 at 75, 76).

### 5.    *Williams's Fifth Grievance*

On October 5, 2018, Williams submitted the following informal grievance:

> I am writing this to see what is going on. I was given anti-dandruff
> shampoo for a foot fungus that is not made for a foot fungus. I got foot
> fungus from the dirty showers. It now formed a lump under my skin on
> my toe that is very painful. Why did they give me a shampoo? That
> doesn't make sense. Can you explain to me why I was given that for?
> Thank you.

(Doc. 36-1 at 3). Williams did not mention Murrell or use the word "lesion" in this

informal grievance. On October 14, 2018, Nurse A. Carder responded to the

grievance: "You may use the sick-call system by submitting an inmate sick-call

request and request information at no charge for only information." (*Id.*). Williams

did not appeal this response. (Doc. 64-3).

6.    *Analysis of Williams's Grievances and Administrative Appeals*

(a).    <u>**Williams's First, Second, and Fourth Grievances**</u>

To sufficiently exhaust administrative remedies, an inmate's grievances—and any appeals of denied grievances—must provide the FDC with notice of the issue for which an inmate seeks a remedy. *See Maldonando v. Unnamed Defendant*, 648 F. App'x 939, 953 (11th Cir. 2016) (citing *Jones*, 549 U.S. at 219); *Harvard v. Inch*, 411 F. Supp. 3d 1220, 1244 (N.D. Fla. 2019) (noting that an inmate's grievance must "alert the prison to the nature of the wrong for which redress is sought.").

As demonstrated above, Williams's first, second, and fourth grievances, and appeals of the FDC's denial of those grievances, did not provide the FDC with notice of Williams's allegation that Murrell—or anyone else for that matter—failed to provide medical care for Williams's lesion. Rather, Williams's first, second, and fourth grievances and appeals alerted FDC officials only to the fact that FDC personnel:

- allegedly ignored a medical emergency (Williams coughing blood while in administrative confinement);

- destroyed or improperly disposed of Williams's sick call requests, and

- refused to take Williams to the medical department for sick call.

Thus, Williams's first, second, and fourth grievances, and appeals of the denials of the grievances, were insufficient to satisfy Williams's burden to grieve the conduct complained of in his complaint in this civil action.

### (b). <u>Williams's Third and Fifth Grievances</u>

As noted above, Williams's third and fifth grievances did not use the word "lesion" or mention Murrell, but they did complain about a painful affliction of his foot, which presumably is the lesion he references in the complaint in this civil action. Additionally, these grievances indicate that:

- Wilson had been denied access to sick call relating to the foot lesion; and

- someone provided Wilson dandruff shampoo as treatment for his foot.

Thus, these informal grievances contained sufficient allegations to alert the prison to the nature of Williams's claim against Murrell. Williams, however, failed to complete each step of the administrative procedure with respect to his third and fifth grievances.

In his amended complaint and his previous responses to the Defendant's motion to dismiss, Williams maintains that he filed an appeal to the Central Office about Murrell's failure to provide adequate care for his foot lesion and that the Office of the Inspector General for the FDC was aware of the appeal. (Doc. 17 at 5-6; Doc. 52 at 2; Doc. 59 at 2). Despite the opportunity to develop the record on this issue,

Williams failed to provide evidence to support these assertions. Murrell, on the other hand, has provided:

(1) Williams's grievance file;

(2) a declaration from the FDC's custodian of the administrative appeal records;

(3) the appeal log maintained by the FDC; and

(4) a declaration from the custodian of records of the FDC's Office of the Inspector General.

These records support Murrell's contention that Williams failed to complete each step of the administrative process.

For example, Williams's grievance file does not contain any formal grievance relating to the allegations contained in his third and fifth grievances. (Doc. 64-3). Additionally, despite Williams's claims that he submitted an appeal to the Central Office relating to Murrell's misconduct, the FDC's appeal grievance log indicates otherwise. The log reflects:

- Williams filed only six appeals between the time of the alleged incident in July 2018 through the time he filed his complaint on February 20, 2019; and

- only two appeals—the appeals of Williams's second and fourth grievances—addressed the denial of medical care.

(Doc. 1 at 1; Doc. 64-3 at 4). As discussed above, Williams's first, second, and fourth grievances were insufficient to place the FDC on notice of Williams's claim against Murrell.

Additionally, Murrell provided a declaration from the Custodian of Record from the FDC Office of the Inspector General. In this declaration, the custodian states that the Inspector General "did not open any case related to Williams on or after [the incident in] July 2018." (Doc. 64-4 at 2). Thus, it appears that Williams did not submit any grievance or appeal directly to the FDC Office of the Inspector General.

Because the record indicates that Williams did not file an appeal of either his third or fifth grievances to the Central office, he could not have properly exhausted his administrative remedies. *Bryant*, 530 F.3d at 1378 ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'"). Therefore, the record clearly establishes that Williams failed to exhaust his administrative remedies as to Murrell. Accordingly, under the PLRA, the District Court must dismiss Williams's claim against Murrell.

## IV. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.    Defendant Ashley Murrell's motion to dismiss Plaintiff's claim against Murrell be **GRANTED**.

2.    Plaintiff's claim against Murrell for deliberate indifference to a serious medical need be **DISMISSED**.

3.    This case be recommitted to the undersigned to address Plaintiff's claim against Defendant Hughes.

At Pensacola, Florida, this <u>15th</u> day of June, 2021.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**